## SILAS C. HOPKINS v. R. M. HESKETT AND OTHERS.[1]

June 23, 1933.

No. 29,363.

*Hursh & Johnson,* for appellant.

*Cobb, Hoke, Benson, Krause & Faegre, Loring M. Staples,* and *Nathan A. Cobb,* for respondents.

*STONE, Justice.*

Judgment was ordered for defendants on the pleadings. Plaintiff appeals from the order denying his motion for a new trial.

[1] Reported in 249 N. W. 584.

Plaintiff sues for what, by amended complaint, he avers was a sum liquidated by contract with defendants at $87,000, due him in part for services rendered as a real estate broker in procuring for defendants the sale and assignment of certain Montana oil and gas properties and in part for property he himself sold to defendants. No question is made that plaintiff has earned substantial sums, generally in the manner he alleges. The first defense is accord and satisfaction, evidenced by two written documents over plaintiff's signature, which defendants aver show discharge of plaintiff's claims and all of them. In addition they plead a statute of Montana (Montana Rev. Code, 1921, c. 265, § 4060) requiring real estate brokers operating in that state to be licensed; that plaintiff was not so licensed; and in consequence is not entitled to recover because of his violation of the statute.

■ Dealing with the statute first, we need not decide whether, to the extent that plaintiff claims for services as a real estate broker, rendered in Montana, he cannot recover because not licensed as required by the local law. .Plaintiff's cause of action does not rest entirely upon his alleged services as broker. He claims also, as we construe his amended complaint, moneys due him as the purchase price of oil lands and leases, his own property, which he sold and transferred to defendants. To the extent that his cause of action, if any, rests upon the latter claim, his omission to get a Montana broker's license will not bar recovery.

■ The second so-called release (exhibit C) executed June 20, 1928, is unquestionably a good release as far as it goes. But it does not have the general and all-inclusive effect claimed for it by defendants and allowed by the court below. It calls for the payment by defendants Heskett and Minnesota Northern Power Company to Frank H. Becker of $1,934 and to plaintiff of $9,065. These payments were made. But their effect was and remains limited by the release to "a full, complete, and final settlement of all deals, transactions, negotiations, accounts, and statements * * * relating to or in any manner affecting the several negotiations and transactions * * * pertaining to said [Becker] oil and gas

permit and the well or other improvements upon the premises herein described." No transaction other than, or unrelated to, the Becker permit was mentioned. Rather obviously, it seems that the document as a release does not go farther in coverage than the so-called Becker lease and the contractual obligations of the parties relating thereto. Them it settled, but others it did not reach.

■ Coming now to what is probably the main position of defendants, we must consider another release (exhibit B) given by plaintiff under date of August 27, 1926, prior to which the record shows all of plaintiff's services were rendered and all of his properties transferred. It recited, and the pleadings show, a simultaneous payment to him of $19,091 "in full payment, settlement, satisfaction and accord of all services of every kind and nature rendered by" plaintiff for the defendants Heskett and the two corporations last above mentioned. It continues by reciting that the sum is also in full payment for a named gas well and five specified oil and gas leases.

For plaintiff it is not questioned, and could not very well be, that as far as the release itself goes, it is rather plain evidence of an accord and satisfaction, a compromise and settlement of all claims existing at the time in his favor against defendants. His counsel seek escape from that conclusion, for the purposes of the motion for judgment on the pleadings, by recourse to their averment that the liquidated sum then due, without controversy or dispute, was $87,000.

On the facts as they may be disclosed by evidence at a trial, that claim may prove without substance. But upon the pleadings as they stand the fact remains that against the apparently complete release there is the averment that the liquidated, undisputed sum then due was $87,000. If that be true, the attempted release for a smaller sum would be no bar to plaintiff's claim for the unpaid remainder. There would be no consideration for his release of the unpaid residue.

The purpose of a motion for judgment on the pleadings is not to try any issue presented by the pleadings, but to determine whether the pleadings present any issue for trial. For the reasons indi-

cated, we hold that the pleadings here present the issue whether, when the release (exhibit B) was given, August 27, 1926, there was a liquidated sum due plaintiff from defendants, without honest question or controversy concerning either amount or existence of the obligation. If the sum were unliquidated, or if there were honest question or controversy concerning either its amount or the existence of the obligation to pay, it would have been the proper subject matter for a compromise and settlement.

It may be, when the facts are gotten at, that plaintiff's lack of a broker's license, as required by the Montana law, will of itself so far put his whole claim in doubt that nothing more is needed to make it a proper subject for such a compromise and settlement, as, on its face, exhibit B suggests. But that is an issue we cannot decide against plaintiff on the pleadings as they are.

Order reversed.